1  DAVID H. KRAMER, State Bar No. 168452
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5  DKramer@wsgr.com

6  JONATHAN M. JACOBSON, N.Y. State Bar No. 1350495
   WILSON SONSINI GOODRICH & ROSATI
7  Professional Corporation
8  1301 Avenue of the Americas, 40th Floor
   New York, NY 10019-6022
9  Telephone: (212) 999-5800
   Facsimile: (212) 999-5899
10 JJacobson@wsgr.com

11 Attorneys for Defendant
12 Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| CARL E. PERSON, | ) CASE NO.: C 06-7297 JF (RS) |
|---|---|
| Plaintiff, | ) DEFENDANT GOOGLE INC.'S |
| v. | ) REPLY MEMORANDUM OF POINTS |
|  | ) AND AUTHORITIES IN SUPPORT |
| GOOGLE INC., | ) OF ITS MOTION TO DISMISS THE |
|  | ) COMPLAINT |
| Defendant. | ) Date: March 9, 2007 |
|  | ) Time: 9:00 a.m. |
|  | ) Dept: 3 |
|  | ) Before: Hon. Jeremy Fogel |

GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No.: C-06-7297 JF (RS)

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I. PERSON'S ANTITRUST ALLEGATIONS FAIL TO STATE A CLAIM ....................... 1

    A. Person's Monopolization Claims Under Sherman Act Section 2 ........................... 1

    B. Person's Sherman Act Conspiracy Claims ............................................................. 3

II. PERSON STATES NO CLAIM UNDER THE NEW YORK DONNELLEY ACT OR CALIFORNIA CARTWRIGHT ACT ...................................................................... 4

III. PERSON STATES NO SARBANES-OXLEY CLAIM ....................................................... 5

IV. PERSON STATES NO CLAIM UNDER GBL SECTIONS 349 AND 350 ...................... 5

    A. Person Fails to Allege Consumer Oriented Conduct ............................................. 5

    B. Person Fails to Allege a Misleading Act or Practice by Google ............................ 6

V. PERSON'S REQUEST FOR LEAVE TO AMEND AGAIN SHOULD BE DENIED ..................................................................................................................................... 9

CONCLUSION .............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463 (9th Cir. 1986) ............................... 3, 4

*Alpha Shoe Serv. v. Fleming Cos.*, 849 F.2d 352 (8th Cir. 1988) ................................................. 11

*Arc Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092 (9th Cir. 2005) ....................................... 11

*Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ...................................................... 2

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ........................ 2

*Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103 (App. Div. 1st Dep't 2000) ................................. 5, 6

*Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043 (9th Cir. 2006) .................................. 9

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*,
    848 F.2d 976 (9th Cir. 1988) ..................................................................................................... 2

*In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996) ....................................... 10

*In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113 (N.D. Cal. 2005) ............................... 11

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ......................................................................... 10

*MetroNet Servs. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004) .................................................... 2

*Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525 (1st Cir. 1989) ............................. 2

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984) ....................................................... 4

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002) ....................................................... 3

*Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073 (9th Cir. 2000) ................................. 9, 10

*Spectators' Commc'n Network Inc. v. Colonial Country Club*,
    253 F.3d 215 (5th Cir. 2001) ..................................................................................................... 3

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) ............................... 10

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ............... 2

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069 (2007) .................. 2

*Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870 (9th Cir. 1982) ........................................................ 2

**STATUTES**

Cal. Civ. Code § 1761(b) ................................................................................................................ 10

**RULES**

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................... 9

Fed. R. Civ. P. 8(e)(1) ..................................................................................................................... 9

**MISCELLANEOUS**

3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 809 (2d ed. 2002) ......................... 4

ABA Section of Antitrust Law, *Antitrust Law Developments* 130 (5th ed. 2002) .......................... 3

In his Amended Complaint, plaintiff Carl Person asserts three types of claims. First, he contends that Google violated Section 2 of the Sherman Act through pricing in its AdWords advertising program that Person characterizes as too high and discriminatory. Second, he alleges that Google violated Section 1 of the Sherman Act (and analogous provisions of New York's Donnelly Act and California's Cartwright Act) by entering into agreements with advertisers (such as eBay) that Person views as more favorable than what he receives. Third, he asserts that Google violated sections 349 and 350 of New York's General Business Law ("GBL") through an allegedly deceptive pricing methodology for AdWords.

As explained in Google's Motion to Dismiss, each of these claims is untenable as a matter of law. With respect to his antitrust claims, Person's opposition virtually concedes that his Amended Complaint fails to state a claim, and he instead focuses on a newly proposed second amended complaint. But the Court has not granted Person leave to amend, and the proposed new allegations are fatally deficient in any event. As for his GBL claims, Person fails to allege the requisite consumer-oriented conduct or any deception by Google. Indeed, Person's opposition brief, like his current pleading, simply underscores that Google accurately describes the AdWords pricing process.

Person's request for leave to file a second amended complaint – a prolix, 99-page document – should be denied. The proposed amendment fails to cure the deficiencies in Person's existing antitrust and GBL claims, and improperly seeks to expand his pleading through the addition of new claims under California law that are facially specious.

## I. PERSON'S ANTITRUST ALLEGATIONS FAIL TO STATE A CLAIM

### A. Person's Monopolization Claims Under Sherman Act Section 2

Person's Amended Complaint ("Compl.") asserts claims under Section 2 of the Sherman Act only from the perspective of a customer – Person as a user of Google's AdWords service. The essence of his claims is that Google's revised pricing for AdWords is too high (although still much cheaper for him than advertising on Yahoo!, MSN, and other services) and that, because larger advertisers are able to generate a higher quality score due to their much higher "click-through rates," Person is being discriminated against in favor of eBay and other large advertisers.

In moving to dismiss, Google pointed out that nothing in Section 2 of the Sherman Act prohibits anyone, even a monopolist, from charging high prices or discriminatory prices to customers. The Supreme Court's decision in *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004), makes clear as can be that the "charging of monopoly prices[] is not only not unlawful [but] is an important part of the free-market system." And the courts, including the Ninth Circuit, have been equally clear that discriminatory pricing is not a Sherman Act violation. *E.g.*, *MetroNet Servs. v. Qwest Corp.*, 383 F.3d 1124, 1133-34 (9th Cir. 2004); *Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525, 528-29 (1st Cir. 1989) (Breyer, J.); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 887 (9th Cir. 1982).

Person's opposition has no answer for this central flaw in his claim. He cites no case suggesting that the unilateral charging of high prices is a violation, or that price discrimination qualifies as exclusionary conduct under Section 2. All that he argues is that one of the many cases cited by Google – *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976 (9th Cir. 1988) – is distinguishable because it involved "open bidding." Plaintiff's Opposition to Motion to Dismiss ("Opp.") at 5. That is a curious distinction since Person's Amended Complaint shows that AdWords also employs open bidding. More curious still is that that is all Person has to say about the authorities on which Google relies. Person does not even mention, let alone discuss, the many other authorities Google cited which compel dismissal of his claim. *See* Defendant's Motion to Dismiss ("Motion") at 5-11.

Neither does Person support his bald argument that Google's pricing practices qualify as exclusionary conduct under Section 2. As Google explained, Motion at 10, pricing practices are not exclusionary absent proof that the pricing is *below cost*. *See, e.g.*, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990). Person cites no authority suggesting otherwise. Indeed, the Supreme Court reconfirmed this basic principle just last week. *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 127 S. Ct. 1069, 1076-77 (2007).

**B.     Person's Sherman Act Conspiracy Claims**

Person also asserts conspiracy claims under Sections 1 and 2 of the Sherman Act. Each is based on allegations that Google has conspired with its larger advertisers to provide them with lower prices that are not available to smaller advertisers. Compl. ¶¶ 35-40, 110-24. As stated in Google's opening brief, these allegations fail to state a claim under Section 1 based on two principles: (1) it is not unlawful for Google to agree with its customers on the price Google will charge and the customer will pay, *see* ABA Section of Antitrust Law, *Antitrust Law Developments* 130 n.738 (5th ed. 2002) ("An agreement between a buyer and a seller regarding the price for the transaction between them is not illegal because the agreement deals with the sale price, not the resale price"); and (2) the existence of vertical agreements between Google and each of its customers does not amount to a Section 1 claim without an alleged *horizontal* agreement between and among direct competitors. Motion at 11-12; *see also 49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1467 (9th Cir. 1986) (granting summary judgment against price-fixing claim where there was "'no agreement among competitors to set prices'") (citation omitted); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 110 (2d Cir. 2002) (stating that a claim of horizontal conspiracy requires "an agreement between or among direct competitors"); *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 224 (5th Cir. 2001) (stating that "hub and spoke sort of proof does not establish a horizontal combination"). Person's conspiracy claim is deficient, therefore, because he does not and cannot allege any conspiracy among Google's customers. All he alleges is a series of (entirely lawful) vertical agreements between Google and each customer.

In his opposition, Person cites no case to the contrary and points to no allegation in his Amended Complaint that suggests an agreement among competitors. Instead, Person recasts his allegations in a futile attempt to cure the Amended Complaint's deficiencies. Person argues that, by requiring a minimum bid from AdWords participants for certain keywords, Google excludes Person and other small advertisers from the auction system, which thereby lowers the price that larger advertisers who remain in the auction ultimately have to pay. Opp. at 13. According to Person, the auction results themselves, therefore, constitute "an agreement among competitors to

1 set the price of keyword advertising" and the advertisers' participation in the auction process
2 amounts to a "horizontal agreement among competitors to be bound by the terms of the auction."
3 *Id.*

4 The suggestion that every advertiser that succeeds in placing an advertisement on
5 AdWords is a participant in a scheme to fix prices is frivolous. To claim an antitrust conspiracy,
6 Person must allege more than a passive agreement based on mere participation in Google's
7 auction; he must allege facts that would a support a finding of "a conscious commitment to a
8 common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv.*
9 *Corp.*, 465 U.S. 752, 768 (1984); *see also 49er Chevrolet,* 803 F.2d at 1467 ("Ordinary sales
10 contracts do not unlawfully restrain trade; indeed, trade would be impossible without them.").
11 He has done nothing of the kind. Person does not come close to alleging a conscious
12 commitment among competitors to fix prices or achieve some other unlawful objective. For
13 these reasons and the reasons stated in Google's opening brief, Person's conspiracy claim under
14 Section 1 of the Sherman Act should be dismissed.

15 Person's claim of conspiracy to monopolize under Section 2 of the Sherman Act also
16 fails. As explained in Google's moving papers, a failure to plead conspiracy under Section 1 of
17 the Sherman Act necessarily dooms any conspiracy claim under Section 2 as well. Because
18 Person fails to state a claim for conspiracy to restrain trade under Section 1 of the Sherman Act,
19 his claims for conspiracy to monopolize under Section 2 necessarily fail as well. Motion at 12;
20 *see* 3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 809 (2d ed. 2002). Person does
21 not even attempt to respond to this basic point.

22 **II.  PERSON STATES NO CLAIM UNDER THE NEW YORK DONNELLEY ACT OR CALIFORNIA CARTWRIGHT ACT**
23

24 As Google explained in its opening brief, Person's antitrust claims fail under New York's
25 Donnelly Act and California's Cartwright Act for the same reasons that Person's antitrust claims
26 fail under federal law. Motion at 12-13. In his opposition, Person simply states, with no
27 additional explanation, that his claims "are actionable under the Donnelly Act and California
28

-4-
GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No.: C-06-7297 JF (RS)

Cartwright Act." Opp. at 14. This bare assertion is insufficient to salvage Plaintiffs' claims under the Donnelly and Cartwright Acts, and those claims should be dismissed.

### III. PERSON STATES NO SARBANES-OXLEY CLAIM

Person's single-paragraph opposition regarding his Sarbanes-Oxley allegations does nothing to save them from dismissal. Opp. at 14. As explained above, Person states no claim for relief, including injunctive relief, under the Sherman Act. Adding Sarbanes-Oxley allegations does not rescue the Sherman Act claim, and Person does not explain why it would. Opp. at 14. To the extent he seeks relief under the Sarbanes-Oxley Act itself, Person fails to identify which sections of Sarbanes-Oxley were allegedly violated. He also fails to demonstrate that he has standing to pursue relief under the provisions of the Act. Accordingly, the claim should be dismissed.

### IV. PERSON STATES NO CLAIM UNDER GBL SECTIONS 349 AND 350

#### A. Person Fails to Allege Consumer Oriented Conduct

As explained in Google's motion, Person's GBL claims fail because he does not allege consumer oriented conduct. Motion at 15-16. Person's initial response is that the statutes do not require it. Opp. at 16. Yet cases interpreting the statutes – including the two cases cited by Person – uniformly require *consumer*-oriented conduct. *See* Motion at 15-16; Opp. at 16-17. Indeed, protection of consumers is the whole point of the statutory scheme entitled "Consumer Protection from Deceptive Acts and Practices."

Person also contends that AdWords affects consumers at large because "virtually everything can and will be offered through this type of advertising" – in other words, that some AdWords advertisers will, in turn, offer goods to consumers. Opp. at 17. This asserted connection to consumer-oriented conduct is too attenuated. Indeed, the same was true in *Cruz v. NYNEX Information Resources*, 703 N.Y.S.2d 103 (App. Div. 1st Dep't 2000), which addressed small business advertising in the Yellow Pages. Although consumers purchase services or products through the Yellow Pages, the *Cruz* court concluded that small business advertisers simply do not qualify as "consumers" protected by sections 349 and 350. Person does not

1  address *Cruz* at all. Nor do the two cases on which Person relies address even remotely similar
2  conduct. In fact, both found consumer-oriented conduct absent and dismissed the claims.

3  Person also claims that "[s]mall business persons are consumers," as they are "consumers
4  . . . trying to make ends meet through part-time small business activities." Opp. at 17. This
5  turns the distinction between business persons and consumers on its head: small business
6  persons are in business to sell to consumers; they themselves are not the consumers or members
7  of the public at large. Again, *Cruz* disposes of this claim, as small business owners who
8  purchase advertising – whether via the Yellow Pages or Google – do not "purchase[] goods,
9  services or property primarily for 'personal, family or household purposes.'" 703 N.Y.S.2d at
10 106. By itself, Person's failure to allege consumer-oriented conduct warrants dismissal of his
11 claims.

12    **B.    Person Fails to Allege a Misleading Act or Practice by Google**

13 Google's motion also explained that Person's GBL claims fail for a second and more
14 basic reason: his failure to allege any misleading act or practice. Motion at 16-18; *see also*
15 Declaration of David Kramer, executed Jan. 25, 2007, Ex. F at 67-68 (statement of Judge
16 Patterson at oral argument) ("As for the deceptive practices, it does seem to me in looking at the
17 web site pages that are included in the motion to dismiss that those don't appear to be
18 deceptive."). According to Person's opposition, Google's website falsely describes its auction
19 and pricing processes. Opp. at 18 (stating that allegedly false statements are alleged in
20 paragraphs 13 and 13A of Complaint); *see also id.* at 14-16. Specifically, Person argues that
21 Google "secretly" bases its pricing on the rate of click-throughs achieved by an ad. *Id*. at 15
22 ("Google secretly changed this advertised 'per-click' payment system into a price based on the
23 rate of clickthroughs experienced by its most profitable advertisers . . . ."); *see also id.* at 14-16,
24 18-19. This process purportedly results in larger advertisers – who supposedly have higher
25 click-through rates – being able to secure lower per-click prices because they are ultimately more
26 profitable to Google. *Id*. This theory, nowhere alleged in Person's GBL counts (*see* Compl.
27 ¶¶ 136-58), fails because there is nothing that is "secret" or in the slightest way deceptive about
28 Google's auction and pricing processes.

Google's website – cited in Person's own complaint – expressly states that an advertiser's bid price depends on its Quality Score. Compl. ¶ 31 ("Quality Score" is "the basis for measuring the quality of your keyword and determining your minimum bid"). Google's website also expressly describes that an advertiser's Quality Score depends on a keyword's click-through rate; the higher the rate, the lower the required bid price:

> How is the Quality Score calculated?
>
> . . . Each keyword is given a Quality Score based on data specific to your keyword performance on Google, including your keyword's clickthrough rate (CTR), relevance of ad text, historical keyword performance, the quality of your ad's landing page, and other relevancy factors.
>
> . . . Your keyword's Quality Score and maximum CPC (at the keyword or Ad Group level as seen on Google) determine your ad's rank on Google and the search network. . . . Remember that improving the relevance of your ad text and keywords will increase your keyword's Quality Score and reduce the price you pay when someone clicks on your ad.

Declaration of David DiNucci, executed Aug. 28, 2006, Ex. C (attaching document found at https://adwords.google.com/support/bin/answer.py?answer=10215&topic=114);[1] *see also* Compl. ¶ 31 ("Quality Score is determined by your keyword's clickthrough rate . . . . [T]he Quality Score may decrease and in turn increase the minimum bid required for the keyword to run."). Thus, Google makes it perfectly clear that bid price depends on an advertiser's click-through rate. While it may be that larger advertisers typically enjoy higher click-through rates, the salient point is that the pricing process is accurately described in Google's website. The fact that in some cases an advertiser may have a lower click-through rate than another who is better known is not at all surprising, not at all deceptive and not at all relevant.

Relatedly, Person complains that he is entitled to purchase advertising at the price of $.01 per click, so long as no other advertiser is bidding for the same keywords. Opp. at 14, 15 ("Google is not letting me participate in its auction program at the minimum price."), 19. But Person does not, and cannot, allege that Google ever guarantees that it will always offer an

---

[1] As explained in Google's moving brief, the Court can consider this document on a motion to dismiss. *See* Motion at 3 n.1. Person cites this same website and document in his Complaint. *See* Compl. ¶ 31 (citing https://adwords.google.com/support/bin).

-7-
GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No.: C-06-7297 JF (RS)

1  advertiser the ability to display its ads for $.01 per click. Likewise, Google never guarantees that
2  an advertiser's bid for a particular price will be accepted. Rather, as described above, Google
3  makes clear that any bid is subject to Quality Score analysis.

4      In addition, Person complains that Google is providing "cost-per-click" advertising that is
5  really "cost-per-impression" pricing. Opp. at 19-20. Again, not so. As Person acknowledges,
6  Google expressly defines "cost-per-impression" pricing as charging the advertiser "for each time
7  your ad is displayed." Opp. at 19 (quoting Google Learning Center). Person does not, and
8  cannot, allege that the AdWords cost-per-click program is priced in this fashion. Rather, the
9  program charges "only when users click on your ad." *Id.* Of course, an advertiser's bid price for
10 submitting an ad depends on its Quality Score and anticipated click-through rate. But that is
11 entirely different than charging an advertiser each time that its ad is displayed. The AdWords'
12 cost-per-click program does no such thing.

13     Person further complains that Google misrepresents that pricing is conducted through an
14 "auction" process, when the process includes Google's evaluation of each participant. Opp. at
15 16. Again, there is nothing misleading here. Google expressly advises how its pricing process
16 works, including Google's use of a Quality Score to set minimum bids. *See* Compl. ¶ 31.

17     Finally, Person argues that Google secretly "manipulates" the number of ads presented
18 alongside search results to enable Google to avoid giving the lowest price of $.01 per click to
19 certain advertisers. Opp. at 16. Again, there is nothing deceptive here. Google never guarantees
20 that any particular number of ads will be placed alongside search results. Likewise, Google
21 never guarantees that a $.01 per click price will be available regardless of an advertiser's Quality
22 Score.

23     If Person is unhappy that he cannot advertise on Google at the price he wishes to pay, he
24 is free to utilize countless other advertising vehicles. He cannot, however, fabricate claims
25 charging that Google's AdWords pricing is somehow deceptive when it plainly is not. For this
26 reason as well, his consumer practices claims must be dismissed.

27
28

## V. PERSON'S REQUEST FOR LEAVE TO AMEND AGAIN SHOULD BE DENIED

This Court should exercise its discretion and deny Person leave to amend his complaint a second time. Person already amended his 39-page Complaint once, in the face of Google's prior, nearly identical motion to dismiss. Person's proposed second amended complaint is now a remarkable 99 pages long. In it, Person seeks to add an enormous number of new factual assertions and at least eight new claims for relief under California law.

Person largely ignores this Court's directive that he be "prepared to argue why leave to amend should be granted" in his opposition. Order Denying in Part and Granting in Part Motion for Administrative Relief at 2. Specifically, Person provides no explanation as to how his proposed amended GBL claims and eight new claims under California law state a claim for relief. Rather, he baldly asserts that the facts he wishes to allege "support other claims based on other California statutes." Opp. at 4; *see also id.* at 20.[2] More importantly, Person provides no excuse for having waited until now to include claims under California law. The parties' forum selection clause – which Judge Patterson found enforceable in his order transferring this case to this Court – required any claims to be brought under California law in the first instance. AdWords Agreement Section 9 ("This Agreement must be . . . governed by California law . . . ."). Person's prior decision to ignore California law until now does not justify leave to amend.

More fundamentally, leave to amend a second time should be denied because Person's proposed amendment would itself be subject to dismissal and amendment is thus futile. *See, e.g.*, *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049-50 (9th Cir. 2006) (leave to amend complaint properly denied as futile); *see generally Simon v. Value Behavioral Health*,

---

[2] In the scant argument that he does provide, Person maintains that the proposed amendments add only (i) new facts arising after the filing of his original complaint, and (ii) new claims based on California statutes or not available under New York or Second Circuit law. Opp. at 20. But Person's characterization is not accurate. The proposed second amended complaint is replete with assertions – which Google submits are frivolous – that, according to Person, are based on facts existing well before the filing of the original complaint. *See, e.g.*, Prop. Am. and Supp. Compl. ¶¶ 12D, 35A2-A6, 55A-C, 157-61A, 172-84, 191-96, 222-24, 232-38, 242-46, 259-60, 265A.

-9-
GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No.: C-06-7297 JF (RS)

1  *Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000) (district court's discretion to deny leave to amend is
2  particularly broad where plaintiff previously amended his complaint).

3  *First*, Person's rambling 99-page proposed pleading appears designed to make it impossible for Google to respond to its confusing and repetitious allegations and would be subject to dismissal under Federal Rule of Civil Procedure 8, which requires not only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but also that "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). Person's tangled web of press clippings and repetitious narrative is "argumentative, prolix, replete with redundancy, and largely irrelevant," and therefore fails under Rule 8. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). Neither this Court nor Google should have to waste its time trying to "fish a gold coin from a bucket of mud," yet that is precisely what would happen if leave to amend were granted. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (affirming dismissal).

*Second*, the new claims Person seeks to add under California law are patently specious. For example:

- Person seeks reformation of the parties' AdWords Agreement to delete what he characterizes as an "illegal venue provision" despite the fact that Judge Patterson has already *enforced* the provision, collaterally estopping Person from making such a claim. Prop. Am. and Supp. Compl. ¶¶ 200-19.

- Person also proposes to pursue a number of claims as the representative of a class while also acting as counsel for that class, which practice is long prohibited. *Id.* ¶¶ 241-50; *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257 (N.D. Cal. 1996).

- Person also seeks to add a claim under California's Consumer Legal Remedies Act (which covers services only for non-commercial and non-business use, *see* California Civil Code Section 1761(b)), when Person has failed to allege consumer oriented conduct.

- Person also seeks damages under California's Unfair Competition Law, which makes no provision for the award of damages. *Id.* ¶ 231.

- A number of Person's assertions – including, but not limited to, his allegations of elder abuse and concealment of an "illegal venue provision," Prop. Am. and Supp. Compl. ¶¶ 201, 202, 203, 211, 268-69 – would likely lead to additional motion practice under Federal Rule of Civil Procedure 11.

*Third*, Person's proposed amendments to his existing antitrust and GBL claims would exacerbate, rather than cure, the fatal deficiencies in them. One example is his effort to recast his

1  antitrust claims as claims brought by a *competitor*, rather than a customer, of Google's.  The idea
2  that Person, a lawyer practicing business law in New York City, is a competitor of Google's is of
3  course preposterous.  To make that leap, Person finds it necessary to come up with an entirely
4  new product market definition – "Website Traffic Monetizing," Prop. Am. and Supp. Compl.
5  ¶¶ 12, 12A – by which he means "making money from the Internet."  One could equally define a
6  market of "all goods and services" in which everyone in the world is a competitor.  *See Alpha*
7  *Shoe Serv. v. Fleming Cos.*, 849 F.2d 352, 354 (8th Cir. 1988) ("[I]f this court were to accept the
8  plaintiffs' market definition [the 'attraction of consumers'], we would expand the scope of the
9  private antitrust action far beyond its intended bounds.").[3]

10  The proposed amendments to Person's GBL claims would fare no better.  For example,
11  while Person seeks to add certain allegations concerning his "consumer" status, those allegations
12  merely emphasize that Person purchases Google advertising for business or political purposes –
13  and not for his own consumer purposes.  Proposed Am. and Supp. Compl. ¶¶ 5, 253, 265A.
14  None indicates that Google, through its AdWords advertising program, offers *consumer* goods or
15  *consumer* services to the public at large.  In addition, while Person repeats and expands his
16  assertions about the impropriety of using click-through rates, Quality Score, and subjective
17  analysis, *id.* ¶¶ 11A-E, 252, 259, 260A-B, 260E-F, Google again makes its pricing practices
18  perfectly clear, and no amount of vigorous assertion by Person can demonstrate otherwise.

19  In sum, leave to amend should be denied.  If leave is granted, however, its scope should
20  be limited to curing the deficiencies in Person's original complaint, and only so long as Person
21  can do so consistent with the dictates of Federal Rule of Civil Procedure 11.  *See, e.g.*, *In re*
22  *Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1127 (N.D. Cal. 2005) (granting leave to
23  amend counterclaims solely to address deficiencies identified by prior court order).

---

[3]  Apparently in support of the proposed amendments to his antitrust claims, Person improperly submitted a lengthy declaration that is replete with extraneous factual assertions.  Because Google's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the allegations in Person's complaint, such extraneous factual matters cannot be considered.  *See Arc Ecology v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005).

**CONCLUSION**

For the reasons stated above, the Complaint should be dismissed and Person's request for leave to file an amended and supplemental complaint should be denied.

Respectfully submitted,

Dated: February 27, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s/_____
     David H. Kramer

Attorneys for Defendant
Google Inc.

-12-
GOOGLE INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
Case No.: C-06-7297 JF (RS)

**CERTIFICATE OF SERVICE VIA FACSIMILE AND U.S. MAIL**

I, Deborah Grubbs, declare:

I am employed in Santa Clara County. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for facsimile transmittal and correspondence for mailing with the United States Postal Service. In the ordinary course of business, documents would be transmitted via facsimile, and correspondence would be deposited with the United States Postal Service on this date.

On this date, I served **DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** on each person listed below, by consigning the document(s) to a facsimile operator for transmittal and by placing the document(s) described above in an envelope addressed as indicated below, which I sealed. I placed the envelope(s) for collection and mailing with the United States Postal Service on this day, following ordinary business practices at Wilson Sonsini Goodrich & Rosati.

> Carl E. Person
> 325 West 45th Street
> Suite 201
> New York, New York 10036
> Facsimile:    (212) 307-0247

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Palo Alto, California on February 27, 2007.

/s/
Deborah Grubbs