Dockets.Justia.com

DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
DKramer@wsgr.com

JONATHAN M. JACOBSON, N.Y. State Bar No. 1350495
CHUL PAK, N.Y. State Bar No. 2341360
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
JJacobson@wsgr.com
CPak@wsgr.com

*Attorneys for Defendant Google Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL E. PERSON, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | CASE NO.: C 06-7297 JF (RS) <br><br> DEFENDANT GOOGLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES <br><br> Date: June 15, 2007 <br> Time: 9:00 a.m. <br> Dept: 3 <br> Before: Hon. Jeremy Fogel |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| NOTICE OF MOTION | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |
| I. | INTRODUCTION | 1 |
| II. | PLAINTIFF'S ALLEGATIONS | 1 |
| | A. The Parties | 1 |
| | B. Google's Advertising Programs | 2 |
| | C. Procedural History | 3 |
| | D. The Second Amended Complaint | 4 |
| III. | ARGUMENT | 6 |
| | A. The Legal Standard for a Rule 12(b)(6) Motion | 6 |
| | B. The Alleged Product Markets Fail | 7 |
| |     1. The Court Has Already Rejected the Search Ad Market as Too Narrow | 7 |
| |     2. The Market for Monetizing Community Search Websites Is Also Too Narrow | 8 |
| | C. Plaintiff Has Not Sufficiently Alleged Anticompetitive Conduct | 9 |
| |     1. Google Can Lawfully Charge Different Prices to Different Customers | 9 |
| |     2. Google Can Lawfully Refuse to Deal with Plaintiff | 10 |
| | D. There Can Be No Essential Facilities Claim When Plaintiff Admits that Alternatives to Google Exist | 12 |
| | E. Plaintiff Advances No Plausible Theory as to How Google's Acquisitions Caused Him Antitrust Injury | 13 |
| | F. The Second Amended Complaint Does Not Comply with Rule 8 | 14 |
| IV. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991) .......................... 12, 14

*Alpha Shoe Serv. v. Fleming Cos., Inc.*, 849 F.2d 352 (8th Cir. 1988) ...................................... 11

*America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851 (E.D. Va. 1999) ............................ 8

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) ..................................... 10, 13

*Bayou Bottling, Inc. v. Dr Pepper Co.*, 725 F.2d 300 (5th Cir. 1984) ...................................... 11

*Big Bear Lodging Ass'n v. Snow Summit Inc.*, 182 F.3d 1096 (9th Cir. 1999) .......................... 7

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ................... 10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........................................ 13

*California Computer Prods., Inc. v. IBM*, 613 F.2d 727 (9th Cir. 1979) .................................. 11

*Digital Envoy, Inc. v. Google Inc.*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005) ............................... 3

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976 (9th Cir. 1988) ..... 10

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997) ............................................................ 7

*Heerwagen v. Clear Channel Communications, Inc.*, 435 F.3d 219 (2d Cir. 2006) ............ 6, 8, 9

*Interface Group, Inc. v. Mass. Port Auth.*, 816 F.2d 9 (1st Cir. 1987) .................................... 10

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981) ......................................... 6

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ................................................................................ 6

*Knieval v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ........................................................................ 3

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) .................................................................... 15

*MetroNet Serv. Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004) ..................................... 11

*Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525 (1st Cir. 1989) ................... 10, 12

*Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835 (9th Cir. 2002) ............................................. 6

*Nevijel v. North Coast Life Ins.*, 651 F.2d 671 (9th Cir. 1981) ................................................. 14

*Northwest Publications, Inc. v. Crumb*, 752 F.2d 473 (9th Cir. 1985) ..................................... 13

*O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217 (N.D. Ill. 1987) ............................................... 13, 14

*Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920 (2d Cir. 1980) ........................................ 10

*Person v. Google*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006) .................................................................. 4

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) ....................................................... 13

*Rebel Oil Co., Inc. v. Atlantic Richfield Company*, 51 F.3d 1421 (9th Cir. 1995) ............ 6, 8, 13, 14

*Rutman Wine Co. v. E&J Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) ............................................ 14

*Sanderson v. Culligan Int'l Co.*, 415 F.3d 620 (7th Cir. 2005) ........................................................... 12

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 783 F.2d 1347 (9th Cir. 1986) ............................................................................................................................................. 10

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006) .................................................... 6

*Soap Opera Now, Inc. v. Network Publ'g Corp.*, 737 F. Supp. 1338 (S.D.N.Y. 1990) ................................................................................................................................................ 11

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ........................................................... 6, 7, 9

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ................................................................................... 13

*Tanaka v. University of Southern California*, 252 F.3d 1059 (9th Cir. 2001) ..................................... 7

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003) ...................................... 15

*Van Buskirk v. Cable News Network, Inc.* 248 F.3d 977, 980 (9th Cir. 2002) ..................................... 3

*Verizon Communication v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) ......... 6, 9, 10, 11, 12

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................ 14, 15

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1, 6, 7

**STATUTES**

15 U.S.C. § 1 ..................................................................................................................................... 3-4

15 U.S.C. § 2 .................................................................................................................................. 1, 3, 4

**MISCELLANEOUS**

ABA ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS (6th ed. 2007) ............................... 13

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 15, 2007 at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South First Street, Courtroom 3, 5th Floor, San Jose, California, 95113, in the courtroom of the Honorable Jeremy Fogel, defendant Google Inc. will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiff Carl E. Person's Second Amended Complaint ("SAC") in its entirety with prejudice. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Sara Ciarelli and the exhibits attached thereto, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This Court dismissed Plaintiff's First Amended Complaint (FAC"), including his claims under Section 2 of the Sherman Act, in a detailed 13-page Order entered on March 16, 2007 (the "Order"). The Court's order of dismissal, however, was with leave to amend or replead.

In dismissing the Section 2 claims from the FAC, the Court concluded that Plaintiff had failed to allege a plausible relevant product market, and had failed to allege anticompetitive or exclusionary conduct. Order at 6-8. Plaintiff's SAC, however, suffers from the exact same flaws. Rather than conform to the legal principles this Court articulated, Plaintiff has alleged essentially the same purported relevant markets and challenged essentially the same supposedly exclusionary conduct. Google therefore seeks dismissal largely on the basis of the Court's prior analysis. This time, however, dismissal should be with prejudice.

**II. PLAINTIFF'S ALLEGATIONS**

    **A. <u>The Parties</u>**

Plaintiff Carl E. Person is an attorney residing in New York, New York. SAC ¶ 3. Although he made no mention of it in his FAC, Person now claims he is in the business of building websites that will sell Internet search advertising features to advertisers, market his candidacy for public office, and market his self-published books. *Id.* ¶ 4. Person alleges that,

since the time of the Court's dismissal of his FAC, he has become a competitor of Google's because he has developed websites designed to accommodate the sale and placement of search advertising. *Id.* ¶ 6. Some of these websites are those that Plaintiff coins "Community Search Websites" similar to Wikipedia.com, craigslist.org, eBay.com, Monster.com, or MySpace.com because of their user-created and searchable content. *Id.* ¶ 41C.

Google maintains "the world's largest online index of websites and other content," and makes "this information freely available to anyone" through the Internet. *Id.* ¶ 11. Google has "the fastest search engine" in the world, offers the "world's largest and most comprehensive collection of information online," and provides advertisers a service that is "substantially more profitable for advertisers and easier and less time-consuming to use." *Id.* ¶¶ 49H, 49J & 49L.

### B. Google's Advertising Programs

Google generates a large portion of its revenue through its advertising programs, with AdWords and AdSense being the most relevant here. *Id.* ¶ 12. AdWords allows an advertiser to bid for the right to have its advertisement shown when a user searches for a particular term or "keyword." *Id.* ¶ 41B. When a Google user searches the Google index for such a keyword, the advertiser's ad is delivered alongside Google's search results. *Id.* When the user "clicks" on the advertisement, the user is redirected to the advertiser's webpage, and the advertiser pays Google a per-click amount that is no higher than the amount which the advertiser bid for use of the keyword. *Id.* ¶ 39.

Google strives to provide its users with the highest quality advertisements that are the most relevant to the user's searches. *Id.* ¶ 63. To select the advertisements to show in response to a given keyword search and to determine the price to charge for a click on such advertisements, Google implements a complex formula that considers an advertisement's prior click-through rate (measuring the extent to which prior users searching for the same keyword found the ad interesting enough to click on it), the quality of the advertiser's copy, and the advertisement's general relevance to the selected keyword. *Id.* ¶ 62. Not every word is a keyword available for use. *Id.* ¶¶ 61, 72. Certain keywords are inactive, and demand a certain bid per-click to "activate." *Id.* Google displays AdWords advertisements on Google's website,

www.google.com, as well as other websites that Google owns or with whom Google has licensing agreements. *Id.* ¶ 36. Plaintiff has participated in the AdWords program as an advertiser promoting a variety of products, services and activities since November of 2003. *Id.* ¶¶ 4, 8.

Google also allows third-party website publishers to benefit from its AdWords program through its program known as AdSense. *Id.* ¶ 41A. In AdSense, third-party publishers display AdWords advertisements on their own sites. When users of a third-party site click on those advertisements, Google shares a portion of the payment it receives with the publisher of the sites from which the click originated. www.google.com/services/adsense_tour/page2.html.[1] Plaintiff does not allege that he has participated (or sought to participate) in Google's AdSense program, which Google makes generally available to any website publisher. www.google.com/services/adsense_tour/index.html.

Plaintiff distinguishes between "Search Advertising," which includes AdWords, and "Non-Search Advertising." Search Advertising is defined as website advertising that is triggered by a website or Internet search, and Non-Search Advertising is defined as any Internet advertising that is not Search Advertising. SAC ¶¶ 41F & 41I.

C. **Procedural History**

Plaintiff filed his initial complaint in the Southern District of New York on June 19, 2006, alleging monopolization and attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2, conspiracy to restrain trade under Section 1 of the Sherman Act, 15 U.S.C.

---

[1] Plaintiff's description of Google's AdSense program is confused and often impenetrable. There are two types of AdSense programs: AdSense for Search, in which a user's query is utilized to determine which ads will be displayed on a third-party publishers' website, and AdSense for Content, where advertising is displayed based on the content of the third-party website that the user is viewing, rather than on a query. *Digital Envoy, Inc. v. Google Inc.*, 370 F. Supp. 2d 1025, 1028 (N.D. Cal. 2005); *see also* www.google.com/services/adsense tour/index.html. The Court can consider this website in adjudicating this motion under Fed. R. Civ. P. 12(b)(6) because Plaintiff repeatedly references AdSense and alleges facts regarding the manner in which it operates. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In any event, Person's pleadings to date have been replete with references to Google's website. *See e.g.* First Amended Complaint ¶¶ 13, 13A, 31. As such, it is appropriate for the Court to look outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Van Buskirk v. Cable News Network, Inc.* 248 F.3d 977, 980 (9th Cir. 2002).

DEFENDANT GOOGLE INC.'S MOTION TO DISMISS    -3-    3107626_4.DOC
CASE NO.: C-06-7297 JF (RS)

§ 1, as well as other state and federal claims. Google moved to dismiss the complaint for failure to state a claim and improper venue. Plaintiff amended the complaint, as of right, to insert additional paragraphs. The FAC alleged that Google, through its pricing of AdWords keywords, restrained trade in the market for "keyword-targeted Internet advertising" by making some keywords unavailable, and requiring minimum bids for others. FAC ¶¶ 86-89. On October 11, 2006, the case was dismissed for improper venue and transferred to this Court. *Person v. Google*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006).

In January 2007, Google moved to dismiss the FAC in this Court. On March 16, 2007, the Court dismissed the FAC for failure to state a claim, but granted Person limited leave to amend again. The Court's grounds for dismissal of the monopolization and attempted monopolization claims were: (1) that Plaintiff's alleged relevant market – "keyword-targeted Internet advertising" – failed because it "was too narrow"; (2) that Plaintiff failed to allege exclusionary or anticompetitive conduct because discriminatory prices (as well as high prices), by themselves, are not anticompetitive; and (3) that Plaintiff, since he did not allege that he was a competitor of Google's, failed to allege pertinent competition that was harmed by Google's actions. Order at 6-8. The Court also noted that an additional alleged relevant market – "monetizing traffic at any one or more websites through . . . the sale of keyword target Internet advertising" – in Person's proposed amended complaint was "vague and overbroad." *Id.* at 7.

### D. The Second Amended Complaint

Person served the SAC on April 15, 2007. Person again claims that Google violates Section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing, or attempting to monopolize, the market for "Search Advertising" and the market for "monetizing the traffic of Community Search Websites through the use of Search Advertising." The Section 2 claims, however, are the only claims Person now asserts. He sets forth three types of practices that he claims are anticompetitive and unlawful under Section 2.

*Acquisitions.* Person alleges that Google obtained its monopoly by acquiring 65 technology companies since 2001, some of which allowed Google to "increase its share of Internet searches" and of the alleged relevant markets. SAC ¶¶ 49A-B; *see also id.* ¶¶ 2A, 50-51

& 99. Google allegedly acquired these companies for the purpose of "depriving competitors in the respective markets of market share and driv[ing] them out of business." *Id.* ¶ 49A.

***Essential Facilities.*** Person alleges that AdWords is an "essential facility" that has not been duplicated competitively by Yahoo or MSN. *Id.* ¶ 80. Person alleges that Google unlawfully maintains a monopoly by not allowing website owners, like Person, to use Google's AdWords system on their own websites to sell and place keyword targeted ads by third-party advertisers. *Id.* Without access to the AdWords system, Plaintiff alleges that he cannot build and monetize his websites. *Id.* ¶ 81. Plaintiff adds that Google has agreements with some leading websites (such as MySpace.com), but allegedly refuses to contract with Plaintiff for sharing its revenues from AdWords on his websites. *Id.* ¶¶ 73-74. Plaintiff does not allege that he has sought or that Google has denied him participation in the AdSense program. The AdSense program (through which third-party website publishers can display search advertising) is open to Plaintiff and anyone else who chooses to participate in the program. http://www.google.com/services/adsense_tour/index.html.

***Discriminatory Pricing.*** Person reasserts the allegations of his FAC that Google has not offered him advertising at the price he would like to pay. According to Plaintiff, he is forced to pay "50 to 100 times" more per click than Google charges eBay and other major advertiser, whose clickthrough rates are higher "because their products and names are well established." SAC ¶ 57. Plaintiff alleges that it is "unconscionable" to force him to pay "100 times $.01" per click while Google gives discriminatory lower prices per click to major advertisers like eBay. *Id.* ¶ 71. Person further complains that it is anticompetitive for Google to tell Plaintiff that his landing page and advertising copy can be improved to bring his clickthrough rate up to the level of eBay, thereby bringing his cost per click down to that of eBay, because it would be "impossible" to make his landing page competitive with eBay, "no matter how hard Plaintiff tried." *Id.* ¶ 59. Plaintiff also alleges that Google permits eBay to use lower-priced "low-demand words" that are denied to him. *Id.* ¶¶ 60 & 64-72.

Person claims damages of $11 million or more (partially for loss of money on his websites created just last month, *id.* ¶ 6). *Id.* ¶ 89. Person also seeks an injunction that would

1 | require Google to (1) allow Plaintiff to use Google's AdWords system on his own website; (2) require Google to let Plaintiff pay the lowest available price for a keyword without adjustments to the price based on the quality and relevance of the website to the keyword; (3) require Google to charge the same price to all advertisers seeking to use a keyword; (4) require Google to let advertisers use any English word as a keyword; and (5) require Google to list all words not available to use as keywords. *Id.* ¶¶ 93A-E.

III. ARGUMENT

 A. <u>The Legal Standard for a Rule 12(b)(6) Motion</u>

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). If, however, it appears that the plaintiff can prove no facts in support of the claim, the action should be dismissed. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir. 2002). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006).

The monopolization claim requires Plaintiff to show that Google possesses monopoly power in the relevant market, and the maintenance or use of that power by anticompetitive and exclusionary means as opposed to legitimate business practices or a superior product. *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407 (2004); *Heerwagen v. Clear Channel Communications, Inc.*, 435 F.3d 219, 226 (2d Cir. 2006). The attempted monopolization claim requires Plaintiff to show that Google engaged in predatory or anticompetitive conduct with a specific intent to monopolize, and a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993); *Heerwagen*, 435 F.3d at 227. Among other things, both claims require sufficient factual allegations to show (1) a relevant product market, (2) anticompetitive or exclusionary conduct, and (3) injury-in-fact to Plaintiff that was caused by the purported wrongful conduct. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981); *Rebel Oil Co., Inc. v. Atlantic Richfield Company*, 51 F.3d 1421, 1432-33 (9th Cir. 1995). As the Court previously explained

1  in dismissing the monopolization and attempted monopolizations claims in the FAC, Plaintiff
2  failed to define the relevant market, and failed to allege anticompetitive conduct. Order at 6-7.
3  The SAC adds nothing to cure these defects, and once again the complaint should be dismissed.

### B. The Alleged Product Markets Fail

Antitrust analysis begins with the definition of the relevant product market. *Spectrum Sports*, 506 U.S. at 459. A plaintiff bears the burden of defining the relevant market. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997). Failure to allege adequately the relevant market is an appropriate ground for dismissal of a Sherman Act claim. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). Determining whether particular conduct is anticompetitive, as opposed to being pro-competitive, can only be done through an "inquiry into the relevant product market and geographic market and the defendant's economic power in that market." *Spectrum Sports*, 506 U.S. at 459; *Big Bear Lodging Ass'n v. Snow Summit Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999).

#### 1. *The Court Has Already Rejected the Search Ad Market as Too Narrow*

Plaintiff again alleges a product market consisting of search-based Internet advertising, defined here as "Search Advertising" instead of "Search Ad Market" as in the FAC. But the Court already ruled that search-based advertising is "too narrow to form a relevant market for antitrust purposes." Order at 7. The Court found "no basis for distinguishing the Search Ad Market from the larger market for Internet advertising." Order at 6. Search-based advertising is "reasonably interchangeable with other forms of Internet advertising" because a website "may choose to advertise via search-based advertising or by posting advertisements independently of any search." Order at 6-7. The SAC does not overcome this obstacle to stating a claim.

The SAC does identify differences between Search Advertising and every other form of Internet advertising, broadly categorized by Plaintiff as Non-Search Advertising, and asserts that the two are "not reasonably interchangeable." SAC ¶¶ 24-32. But simply proclaiming that something is not reasonably interchangeable is "insufficient" to survive a Rule 12(b)(6) motion. *Tanaka*, 252 F.3d at 1063-64; *Big Bear Lodging*, 182 F.3d at 1105. A Mercedes-Benz and a BMW will have numerous, articulable differences, but that does not place them in separate

product markets. The key is whether search-based advertising and other forms of Internet advertising are reasonable substitutes. Order at 6. The SAC alleges no facts to show that they are not reasonably interchangeable. Indeed, the SAC states that while search-based advertising has grown faster, other methods of Internet advertising still account for 50% of all Internet advertising. SAC ¶ 27. If two products are reasonably interchangeable, (and the Court has already held that they are) the relevant product market cannot be defined by just one of the products – the product market must be expanded to include both. *Rebel Oil*, 51 F.3d at 1436; *America Online, Inc. v. GreatDeals.Net*, 49 F. Supp. 2d 851, 858-59 (E.D. Va. 1999).

### 2. *The Market for Monetizing Community Search Websites Is Also Too Narrow*

Plaintiff also alleges a "submarket" of "monetizing the traffic of Community Search Websites through use of Search Advertising." SAC ¶ 44. This proposed "submarket" suffers from the exact same flaw. Plaintiff alleges no facts that explain why advertising on websites other than search engines – or, for that matter, e-mail, direct mail, advertising in magazines, newspapers, radio stations, television, billboards, or public transportation vehicles – are not commercially acceptable alternative manners of reaching potential customers. As the Court explained, search-based advertising is reasonably interchangeable with other forms of Internet advertising, and there is no reason why a community website cannot "choose to advertise via search-based advertising or by posting advertisings independently of any search." Order at 6-7. The same reasoning was applied in *GreatDeals.Net*, 49 F. Supp. 2d 851, where the district court dismissed a complaint alleging a product market consisting of "e-mail advertising" because there are numerous reasonable substitutes, including other forms of Internet advertising, "direct mail, billboards, television, newspapers, radio, and leaflets, to name a few." *Id.* at 858.

In order to prevail, monopolization and attempted monopolization claims must be tied to a relevant market because "the power to control prices or exclude competition only makes sense with reference to a particular market." *Heerwagen*, 435 F.3d at 229. Having failed to define properly a relevant product market, Plaintiff's monopolization and attempted monopolization claims make no sense and, therefore, should be dismissed.

### C. Plaintiff Has Not Sufficiently Alleged Anticompetitive Conduct

Sufficient allegations of exclusionary or anticompetitive conduct are also essential elements of Plaintiff's monopolization and attempted monopolization claims. It is axiomatic that the mere "possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Trinko*, 540 U.S. at 407 (emphasis in original); *Spectrum Sports*, 506 U.S. at 456. Plaintiff must demonstrate that Google engaged in some form of exclusionary conduct that had the effect of actually harming competition. *Heerwagen*, 435 F.3d at 226-27.

The Court has already observed that "beyond making conclusory allegations that Google acts as a monopoly and has denied access to an essential facility, Plaintiff fails to allege exclusionary or anticompetitive conduct." Order at 7. The Court added that Plaintiff has made it "difficult to determine what types of competition Plaintiff believes are threatened by Google's actions." *Id.* at 8. Those failures continue with the SAC. It is perfectly appropriate for Google to grow its market share, necessarily at the expense of rivals, and to earn a profit. What Plaintiff fails to do is allege how Google's conduct harms competition. This is a critical failure because the "purpose of the [Sherman Act] is not to protect businesses from the working of the market . . . . The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Spectrum Sports*, 506 U.S. at 458.

#### 1.  *Google Can Lawfully Charge Different Prices to Different Customers*

Despite the Court's prior ruling, Plaintiff continues to allege that Google charges higher and discriminatory prices to Plaintiff than others, such as eBay. The Court dismissed these allegations because "high prices by themselves, are not anticompetitive or exclusionary." Order at 7-8 (citing *Trinko*). Yet, the same allegations remain the basis for the antitrust claims in the SAC. SAC ¶ 57.

Charging monopoly prices is not unlawful. "The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important

element of the free-market system." *Trinko*, 540 U.S. at 407. Nor is it unlawful to charge low prices to some customers but not others – at least absent evidence that prices are "predatory," that is, below an appropriate measure of cost, which the SAC does not allege. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993). "Low prices benefit consumers regardless of how those prices are set. As long as they are above predatory levels, they do not threaten competition." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990). Absent predatory practices, "discriminatory pricing does not threaten competition." Order at 8 (citing *Atlantic Richfield*, 495 U.S. at 340); *Trinko*, 540 U.S. at 407-08; *Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920, 927-28 (2d Cir. 1980). There is nothing anticompetitive about a seller who charges discriminatory prices "even though that price may make it harder for a competitor to enter, or to remain in the market . . . [or] harms the non-favored dealers." *Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525, 528-29 (1st Cir. 1989) (Breyer, J.).

### 2. *Google Can Lawfully Refuse to Deal with Plaintiff*

Conduct is not anticompetitive unless it expands (or threatens to expand) the defendant's market power by impairing the competitiveness of defendant's rivals. *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988); *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 783 F.2d 1347, 1350 (9th Cir. 1986). The SAC fails to state a claim because Plaintiff is not a rival to Google in any meaningful manner, and he has not alleged facts showing that Google has injured him by enlarging its own market share by diminishing his.

Courts consistently dismiss claims at the pleading stage where a plaintiff cannot show that he is in competition with the defendant. *Ferguson*, 848 F.2d at 983 (Section 2 claims dismissed because plaintiff "simply failed to outbid [plaintiff's] competitors" for leasing rights in defendant's stadium); *Seattle Totems*, 783 F.2d at 1350 (Section 2 claims dismissed because defendant hockey league's refusal to grant plaintiff a franchise did not injure competition since plaintiff did not compete with defendant and there was no other hockey team in Seattle that defendant was trying to protect); *Interface Group, Inc. v. Mass. Port Auth.*, 816 F.2d 9, 12 (1st

Cir. 1987) ("it is difficult to see how denying a facility to one who . . . is not an actual or potential competitor could enhance or reinforce the monopolist's market power"); *Soap Opera Now, Inc. v. Network Publ'g Corp.*, 737 F. Supp. 1338, 1349 (S.D.N.Y. 1990) (dismissing Section 2 claims because even if defendant is a monopolist, "unless plaintiff and defendant are in competition with one another, defendant has no duty to deal with plaintiff").

Plaintiff asserts that he is in competition with Google now that, since the dismissal of his FAC, he has opened one website and is about to open several more that he plans to monetize with search advertising, and that Google has refused to permit him to use Google's search advertising services on his websites on terms comparable to other websites. *See, e.g.*, SAC ¶ 54. Anyone can create a website and display advertising on it. To say that Plaintiff now is a competitor simply by virtue of owning a website ready to display advertising makes the term "competition" meaningless. Thus, for example, a shoe store occupying the same shopping center as a grocery store cannot allege that it is in competition with the grocery store for the "attraction of consumers." *Alpha Shoe Service v. Fleming Cos., Inc.*, 849 F.2d 352, 354 (8th Cir. 1988).[2]

Even accepting as true the allegation that Plaintiff competes with Google, however, does not save the SAC from dismissal. Google simply is not obliged to do business with Plaintiff. Google has "no duty to aid competitors." *MetroNet Serv. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131 (9th Cir. 2004). Compelling Google to "share the source of [its] advantage is in some tension with the underlying purpose of antitrust law." *Trinko*, 540 U.S. at 407-08.

Nor, for the same reasons, is Google obliged to help another firm profit. *California Computer Prods., Inc. v. IBM*, 613 F.2d 727, 744 (9th Cir. 1979) ("IBM, assuming it was a monopolist, had the right to redesign its products to make them more attractive to buyers . . . It was under no duty to help [plaintiff] survive or expand"); *Bayou Bottling, Inc. v. Dr Pepper Co.*, 725 F.2d 300, 304-05 (5th Cir. 1984) (monopolist bottler not obliged to share coolers and vending machines with rivals).

---

[2] In any event, Person is able participate and get search advertising through AdSense. www.google.com/services/adsense_tour/index.html.

Google is free to "exercise [its] own independent discretion as to parties with whom [it] will deal," and the terms by which it will deal with them, if at all. *Trinko*, 540 U.S. at 408; *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005) ("Warfare among suppliers and their different products *is* competition. Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law"); *Monahan's Marine*, 866 F.2d at 529 ("nothing anticompetitive in the simple fact that a seller selectively cuts its prices, or offers other favorable terms, to some of its dealers, even though such discrimination harms the non-favored dealers").

The most that Plaintiff can be said to have done is allege that Google competes vigorously. What Plaintiff has not done, as he must, is sufficiently allege that Google competes in a manner that harms competition and consumers. And without the necessary allegation of anticompetitive or exclusionary *conduct*, the SAC must be dismissed. *Trinko*, 540 U.S. at 407.

### D. There Can Be No Essential Facilities Claim When Plaintiff Admits that Alternatives to Google Exist

Plaintiff continues to maintain a purported "essential facilities" claim. It is doubtful that a separate essential facilities claim survived the Supreme Court's *Trinko* decision. *Trinko*, 540 U.S. at 410-11 ("We have never recognized such a doctrine"). Even assuming otherwise, however, the SAC fails to meet the requirements of an essential facilities claim. A "facility that is controlled by a single firm will be considered 'essential' only if control of the facility carries with it the power to *eliminate* competition in the downstream market." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991) (emphasis added).

Plaintiff may allege that his web traffic and revenues have declined (or simply not risen), but he cannot allege that he faces elimination as a result of Google's conduct. Indeed, without access to Google's AdSense to monetize his websites so far, Plaintiff admits that he has opened or is about to open numerous websites. SAC ¶ 6. In spite of Google's purportedly wrongful conduct, Plaintiff has clearly sustained his business. Nor can Plaintiff allege that Google will eliminate downstream competition when he acknowledges that Google faces competition from

"major search engines" (e.g., Inkomi, Ask Jeeves, and Yahoo), each of which is "capable of joining with Community Search Websites to monetize their website traffic." SAC ¶ 23.

Plaintiff has not alleged adequately that Google is an "essential facility" within the relevant markets, and the SAC does nothing to cure the defects. Accordingly, the essential facility claim, to the extent it exists as a separate claim, should be dismissed.

E. **Plaintiff Advances No Plausible Theory as to How Google's Acquisitions Caused Him Antitrust Injury**

Person's allegations concerning Google's acquisitions fail for two reasons.

*First*, Person has failed to allege sufficiently that any or all of the acquisitions caused him injury in fact. It is well established that every antitrust "plaintiff must establish the existence of 'injury' to itself, also referred to as 'impact' or the 'fact of damage.'" ABA ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS 814-15 (6th ed. 2007). Absent sufficient allegations of causal injury, a complaint is subject to dismissal for failure to state a claim. *Id.*; *Tal v. Hogan*, 453 F.3d 1244, 1258 (10th Cir. 2006); *see Northwest Publications, Inc. v. Crumb*, 752 F.2d 473, 476-77 (9th Cir. 1985). Here, Person nowhere explains how Google's acquisitions of such diverse firms as YouTube, Picasa, or Adscape, could conceivably have injured him. The acquisitions may or may not have strengthened Google and made it a stronger competitor. But either way, it is obvious that Plaintiff was not harmed. *See O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 222-23 (N.D. Ill. 1987).

*Second*, the SAC fails to allege how Google's various acquisitions have caused *antitrust* injury. Every antitrust claim must allege facts sufficient to show "antitrust injury" – injury that reflects the adverse effect of the challenged conduct on competition. *Atlantic Richfield*, 495 U.S. at 338-42. An adverse effect on the plaintiff (had one been alleged), without a showing of harm to consumers and competition, is insufficient. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977); *see, e.g., Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001) (plaintiff's falling market share fails to show antitrust injury because a "decrease in one competitor's market share ... affects competitors, not competition"). Even conduct that eliminates rivals may lead to a reduction in competition, but "reduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Rebel Oil*, 51 F.3d at 1433. An act is

"deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality." *Id.* (emphasis in original).

Far from harming competition or reducing consumer welfare, Plaintiff himself touts the benefits to consumers of Google's various acquisitions. Google's acquisitions have permitted it to provide "the fastest search engine" that delivers search results to consumers "substantially faster than any other search website can locate and display its search results;" to develop the "world's largest and most comprehensive collection of information online;" and to offer services to customers that are "easier and less time-consuming to use," more efficient, and more cost-effective than rivals. SAC ¶¶ 49H, 49J & 49L.

Google's rise has actually spawned more competition that ultimately inures to the benefit of consumers. The SAC points out that Microsoft and Yahoo have invested billions of dollars in new and improved technology and infrastructure in order to compete more effectively against Google. *Id.* ¶¶ 49X-HH. And Google's recent acquisition of YouTube has prompted News Corp. to build the next YouTube and other community websites on its own. *Id.* ¶ 40. By way of his examples, Plaintiff cannot adequately allege that Google's acquisitions have harmed competition by way of higher prices, reduced output, or lower quality. *Rutman Wine Co. v. E&J Gallo Winery*, 829 F.2d 729, 734-35 (9th Cir. 1987). Indeed, by acquiring companies that complement its products or stand in a vertical position to it, Google's acquisitions could just as likely have led to *lower* prices. *O'Neill*, 669 F. Supp. at 222-23 (dismissing consumer's antitrust challenge to soft drink concentrate manufacturer's acquisition of bottler). Because Plaintiff cannot show that Google's acquisitions caused injury to competition or a reduction in consumer welfare, the SAC must be dismissed. *Rebel Oil*, 51 F.3d at 1433.

F. **The Second Amended Complaint Does Not Comply with Rule 8**

Person also fails to meet Federal Rule of Civil Procedure 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to comply with Rule 8(a) may be dismissed with prejudice. *See Nevijel v. North Coast Life Ins.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal where the second complaint was

"equally as verbose, confusing, and conclusory as the initial complaint."); *accord McHenry v. Renne*, 84 F.3d 374 (9th Cir. 1996) ("Something labeled a complaint but written more as a press release, prolix evidentiary detail, yet without simplicity, conciseness and clarity . . . fails to perform essential functions of a complaint.") While reduced in sheer length from the 99-page proposed amended complaint submitted in opposition to Google's motion to dismiss the FAC, the SAC is neither short nor plain. It is difficult, if not impossible, to discern what Plaintiff is claiming through the thicket of the SAC's hundreds of repetitive and redundant subparagraphs (many filled with impenetrable run-on sentences, parentheticals and cross-references). Even attempting to discern Plaintiff's legal theories from his prolix allegations so that Google could move to dismiss them has been an attempt to "fish a gold coin from a bucket of mud." *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (affirming dismissal). Therefore, the SAC should be dismissed on the basis of Rule 8 as well.

## IV. CONCLUSION

For the reasons stated above, Google Inc. respectfully requests that the Court dismiss the Second Amended Complaint in its entirety.

Respectfully submitted,

Dated: April 30, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:

Jonathan M. Jacobson

*Attorneys for Google Inc.*