# EXHIBIT 4

**E-Filed 03/16/2007**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARL E. PERSON,<br><br>                Plaintiff,<br><br>    v.<br><br>GOOGLE, INC.,<br><br>                Defendant. | Case Number C 06-7297 JF (RS)<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>[re: docket no. 17] |

    Defendant Google, Inc. ("Google") moves to dismiss the First Amended Complaint ("FAC") of Plaintiff Carl E. Person[2] for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion will be granted with leave to amend.

**I. BACKGROUND**

1.    Procedural Background

    Plaintiff filed the initial complaint in this action on June 19, 2006 in the Southern District of New York. The initial complaint included six claims: (1) attempted monopolization and

---

[1] This disposition is not designated for publication and may not be cited.

[2] Plaintiff, acting *pro se*, states that he is an attorney.

monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) conspiracy to restrain trade and fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (3) attempted monopolization and price fixing in violation of Section 340 of the Donnelly Act, N.Y. Gen. Bus. Law § 340; (4) deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349, 349-c; (5) false advertising in violation of N.Y. Gen. Bus. Law §§ 350, 350-e; and (6) monopolization, conspiracy to fix prices, and discriminatory pricing in violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720.

On July 27, 2006, Google moved to dismiss the complaint for improper venue and for failure to state a claim upon which relief can be granted. On August 3, 2006, Plaintiff opposed the motion and requested leave to amend his complaint by the addition of two paragraphs.[3] Plaintiff did not add claims to his complaint. On September 20, 2006, one week after oral argument on the motion, Plaintiff informed Judge Patterson that he wished to make further amendments to his complaint. In a letter dated September 18, 2006, Judge Patterson determined that Plaintiff had exercised his right to amend his complaint on August 3, 2006, and declined to grant Plaintiff further leave to amend. On October 11, 2006, Judge Patterson granted the motion to dismiss for improper venue without deciding whether Plaintiff stated a claim upon which relief can be granted.

On November 27, 2006, the instant case was transferred to the Northern District of California. The operative complaint at the time of the transfer was the FAC, that is, Plaintiff's

---

[3] The paragraphs were:
"95A. Google's anticompetitive activities as alleged are specifically intended to increase Google's income, profits and of the keyword-targeted internet advertising market, and to deprive competitors Yahoo, MSN and any others of income, profits and market share."
"146A. Plaintiff is a consumer as to his candidacy and part-time book selling activities and, upon information and belief, many hundreds of thousands of AdWords advertisers during the past 3 years are also consumers in their Google advertising activities, including consumers who are (i) candidates for public office, (ii) offering unwanted personal goods for resale and/or (ii) [sic] retired or self employed persons, acting part-time, offering goods or services to supplement their income."
See Google Opposition to Motion for Leave to Amend Ex. B.

2
Case No. C 06-7297 JF (RS)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

original complaint as amended as of right on August 3, 2006.[4] On January 5, 2007, this Court issued an order relating the instant case to *KinderStart.Com, LLC v. Google, Inc.*, No. C 06-2057 JF (RS). On January 25, 2007, Google moved to dismiss the FAC for failure to state a claim upon which relief can be granted. On February 9, 2007, Plaintiff moved for leave to file a document that he entitled "First Amended Complaint," but that in fact would have been, in light of Judge Patterson's earlier ruling, a second amended complaint. The proposed pleading includes more factual detail and adds claims under California law.[5] On February 13, 2007, the Court granted in part and denied in part Plaintiff's motion and instructed Plaintiff that he "should be prepared to argue why leave to amend should be granted in the event that the Court grants the motion [to dismiss]." February 13, 2007 Order 2. On February 20, 2007, Plaintiff filed opposition to the motion to dismiss. The Court heard oral argument on that motion on March 9, 2007.

2.   Factual Background

Plaintiff is an attorney, businessperson, and candidate for statewide office in New York, and a customer of Google's "AdWords" services. FAC ¶ 8. Plaintiff alleges the following: Google is a global technology leader focused on improving the ways people connect with

---

[4] To the Court's knowledge, no single document exists that incorporates the amendments made to the complaint on August 3, 2006. Since the amendments do not disrupt the numbering of paragraphs in the original complaint, the Court will cite to the FAC using the numbering of the original complaint and of the amendments.

[5] The proposed complaint includes fifteen claims: (1) monopolizing and attempting to monopolize in violation of Sherman Act § 2; (2) denial of use of essential facility to competitor and denial of non-discriminatory use of AdWords in violation of Sherman Act § 2; (3) conspiracy to fix prices and unreasonably restrain trade in violation of Sherman Act § 1; (4) violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720; (5) violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17000, *et seq.*; (6) violation of the New York Donnelly Act, N.Y. Gen. Bus. Law § 340; (7) breach of contract; (8) rescission of contract; (9) reformation of contract; (10) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a); (11) unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; (12) false and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17500-09; (13) class action claims under California law; (14) deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349, 349-c; and (15) false advertising in violation of N.Y. Gen. Bus. Law §§ 350, 350-e.

information. FAC ¶ 11. Google maintains the world's largest index of web sites and other content. *Id.* AdWords is a program used by businesses to promote their products and services with targeted advertising. *Id.* Such advertisements appears either to the right of or above a searcher's displayed search results and are designated as "sponsored." FAC ¶ 23. The advertisements are triggered by a searcher's use of a keyword designated by a Google advertiser. FAC ¶ 20. Google auctions these keywords to potential advertisers, FAC ¶ 24, and charges the auction winner when a user clicks on the sponsored link. FAC ¶ 21, 27. Google previously advertised five cents as its minimum per-click price and fifty dollars as the maximum per-click price, but changed these amounts to one cent and one hundred dollars, respectively, in 2005. FAC ¶ 24.

        Plaintiff alleges that "[s]omewhere along the way, AdWords was able to start overcharging its smaller customers such as Plaintiff by imposing requirements that increased the cost to Plaintiff and other small-business advertisers and made advertising by them unprofitable, while at the same time reducing the cost to high-volume advertisers (generally large corporations) to increase their profitability and use of AdWords." FAC ¶ 19. "Google is requiring Plaintiff and other small-business advertisers to pay as much as 100 times or more per click than the amount per click paid by monopolizing and other large established advertisers who by their established name or trademark are able to get a substantially higher rate of clicks (or 'clickthrough rate' or 'CTR') for the same number of times their ads are served up to Google searchers." FAC ¶ 28. "Google is requiring each of its advertisers to be as successful as a monopolist, and charging them substantially more (or denying them use of AdWords) if not." FAC ¶ 29. "AdWords has monopoly power for a variety of distinguishing reasons . . . , with the result that Yahoo and Microsoft/MSN keyword-targeted Internet advertising are poor, undesirable substitutes for AdWords." FAC ¶ 30A. "Google is extending its market monopoly in this way to every aspect of business in the United States and making existing monopolies larger, turning potential monopolies into monopolies, and preventing small and new businesses from competing." FAC ¶ 30. In 2005, Google introduced the "Quality Score," "quality-based minimum bids," and "landing page quality," which pertain to Google's process for determining a

1  website's minimum bid required for a keyword to run. FAC ¶ 31. "Google then started to charge
2  Plaintiff and its other small-business advertisers an additional amount per click based on
3  apparent human evaluation of the website 'landing page' created by the advertiser . . . ." FAC ¶
4  32. "Without consulting Plaintiff or other small-business advertisers, Google turns off most of
5  the ads and labels them as 'inactive', having the effect of upsetting the advertiser's AdWords
6  marketing program or refuses to allow ads to be placed for a variety of reasons, with the same
7  discouraging effect." FAC ¶ 33.

Plaintiff alleges that Google has conspired with a number of other large corporations such as Amazon.com and eBay, Inc. in an effort to "increase its sales to the major advertisers . . . , and reduce if not eliminate the profitable use of AdWords by the Plaintiff and other small businesses." FAC ¶ 39. "AdWords has become an advertising boon for the large, successful, monopolizing companies, without having to compete significantly with smaller competitors." FAC ¶ 49. "Google has a monopoly, and controls pricing, terms, and whether the Plaintiff and other small businesses are able to make any use of AdWords to compete with AdWords large corporate customers." FAC ¶ 69.

## II. LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995). However, under the "incorporation by reference" doctrine, the Court also may consider documents that are referenced extensively in the complaint and accepted by all parties as authentic, even if they are not

physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999). "Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

### III. DISCUSSION

1. Claims Under the Sherman Act

    a. Relevant Market

In order to make out a claim for attempted monopolization or monopolization, a plaintiff must define the relevant market. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997). The relevant market is "the field in which meaningful competition is said to exist." *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997). Failure to allege the relevant market is an appropriate ground for dismissal of a Sherman Act claim. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001). "A 'market' is any grouping of sales whose sellers, if unified by a monopolist or a hypothetical cartel, would have market power in dealing with any group of buyers." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). The Supreme Court has explained that the relevant market for antitrust purposes is determined by the choices available to consumers. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 481-82 (1992). In some instances, one brand of a product can constitute a separate market. *Id.* "The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Tanaka*, 252 F.3d at 1063.

Plaintiff defines the relevant market in the FAC as "'keyword-targeted Internet advertising' in which advertisers pay to have their advertisements displayed (alone or among an ordered group of ads identified as such) near the search results obtained from Internet search engine (such as the search engines of Google and Yahoo) using the keyword(s) selected by the advertiser." FAC ¶ 43. The Court finds no basis for distinguishing the Search Ad Market from the larger market for Internet advertising. Search-based advertising is reasonably interchangeable with other forms of Internet advertising. A website may choose to advertise via search-based

advertising or by posting advertisements independently of any search. The Search Ad Market thus is too narrow to form a relevant market for antitrust purposes. Accordingly, the Court will dismiss the monopolization and attempted-monopolization claims included in the FAC.

The proposed complaint defines the relevant market as the market

> for monetizing traffic at any one or more websites through a distributed computing system enabling the auction or sale of keyword-targeted internet advertising to competing advertisers from a database of advertisers with ads triggered by the specific search words used by free or paid, online Google-powered searches, initiated by users from browsers or www.google.com or other websites, of User-Designated Information Databases, and payment for the advertising, at a price per click determined by auction and/or Google, for each click on any of the displayed ads, collected by Google on an immediate or periodic basis, from a previously-designated and current source of payment for the advertiser, with the payments divided by agreement among Google, the owner of the website initiating the search, the advertiser, any agencies or brokers, and any others. Hereinafter, this described system is referred to as the 'Website Traffic Monetizing Market' and Google dominates this market.

Proposed Complaint ¶ 12. As so defined, the proposed market apparently would include almost anyone who hopes to turn a profit while either buying, selling, or consulting on the sale of keyword-advertising. Plaintiff also alleges that Google's "purpose is to foreclose competition in the business of developing website traffic and monetizing (or converting to revenue) the website traffic or hits for the benefit of the website owner, and to reduce the value of websites to their owners and enable Google to purchase or otherwise acquire them at less than their fair market value in a non-monopolized market." Proposed Complaint ¶ 19. The allegations at the end of this paragraph suggest that the relevant market might include anyone who operates a website. Thus, as presently framed, Plaintiff's definition of the relevant market is vague and overbroad.

   b. Exclusionary or Anticompetitive Conduct

The core of both the FAC and Plaintiff's proposed new pleading appears to be a series of allegations that Google discriminates between large corporations that purchase AdWords keywords and small businesses that make similar purchases. However, beyond making conclusory allegations that Google acts as a monopoly and has denied access to an essential facility, Plaintiff fails to allege exclusionary or anticompetitive conduct. Although Plaintiff alleges high and discriminatory pricing, high prices, by themselves, are not anticompetitive or

exclusionary. *See Verizon Communications, Inc. v. Trinko*, 540 U.S. 398, 407 (2004). Absent predatory practices, discriminatory pricing does not threaten competition. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990).

Perhaps because of his failure to identify a relevant market, it is difficult to determine what types of competition Plaintiff believes are threatened by Google's actions. It may be that the competition at issue is between Google and other major Internet advertising providers, such as MSN and Yahoo, who are "poor, undesirable substitutes for AdWords," FAC ¶ 30A, but that does not appear to be the focus of the FAC. Instead, the FAC provides a somewhat confusing picture of Google's competitors and, as Plaintiff concedes, does not allege that Plaintiff himself is a competitor of Google. *See* Opposition 3. Nor do Plaintiff's monopolist-by-association allegations clarify his pleading, as they suggest that the competition at issue is for dominance of the Internet and the larger economy. *See e.g.* FAC ¶ 30 (alleging that Google "mak[es] existing monopolies larger, turn[s] potential monopolies into monopolies, and prevent[s] small and new businesses from competing"), FAC ¶ 66 (appearing to imply that Google is a monopolist because of its dealing with the "monopolist eBay"). Finally, while it appears that Plaintiff is concerned about the competition between small and large corporate advertisers who use Google's services, *see e.g.* FAC ¶¶ 49, 69, it is unclear if Plaintiff believes that Google has a stake in that competition. The proposed complaint suffers from similar deficiencies. While Plaintiff appears to attempt to allege more than discriminatory or high pricing, he still fails to state a claim with sufficient clarity.

        c.     Conspiracy to Restrain Trade

Google moves to dismiss Plaintiff's claim that Google conspires to restrain trade or monopolize on the basis that Plaintiff does not allege that Google conspires with competitors to fix prices. Indeed, as Google suggests, the FAC appears to allege that Google has agreed to high and discriminatory prices with a number of large clients. This is not actionable under the Sherman Act. *See 49er Chevrolet, Inc. v. General Motors Corp.*, 803 F.2d 1463, 1468 (9th Cir. 1986) ("[I]t is a longstanding antitrust principle that Section 1 of the Sherman Act does not preclude a party from unilaterally determining the parties with whom it will deal and the terms on

8

which it will transact business."). The Court finds no argument in Plaintiff's opposition explaining why this principle does not apply to the FAC; the Court concludes that it applies equally to the proposed complaint.

### d. Reference to the Sarbanes-Oxley Act

Both the FAC and the proposed new complaint make reference to the Sarbanes Oxley Act of 2002, P.L. No. 107-204, and request injunctive relief thereunder. *See* FAC ¶¶ 106-08, Proposed Complaint ¶¶ 106-08. Plaintiff provides no meaningful explanation of the grounds on which he seeks relief under this act apart from stating that he believes it enables him to seek injunctive relief.

### 2. Claims Under New York Law

#### a. Claims Under the Donnelly Act

The third claim in the FAC alleges violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340, by monopolization, attempted monopolization, price-fixing, and unreasonable restraint of trade. FAC ¶¶ 130-35. Google moves to dismiss the claim on the basis that to the extent that the statute provides any basis for relief, its scope is constrained by federal law. Motion 12-13 (citing *People v. Rattenni*, 81 N.Y.2d 166 (1993), which explains that "[t]he Donnelly Act was modeled on the Federal Sherman Act of 1890, and thus we have observed that State antitrust law should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." *Id.* at 171 (internal citations and quotation marks omitted).). Plaintiff provides no argument in response beyond the bare assertion that the claim is actionable. *See* Opposition 14. In light of this lack of argument, the Court concludes that the Donnelly Act claim suffers from the same defects as Plaintiff's Sherman Act claims and is subject to dismissal. There appears to be no material difference between the Donnelly Act claim in the FAC and claim six of the proposed complaint.

#### b. Claims Under Other Sections of the General Business Law

The FAC asserts claims for deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349, 349-c and false advertising in violation of N.Y. Gen. Bus. Law §§ 350, 350-e.

9

Google moves to dismiss these claims on numerous bases. These claims appear to be based upon a theory that, after agreeing to a certain pricing structure, Google could not terminate the agreement and offer a different pricing structure. Such allegations are not sufficient to state a claim under N.Y. Gen. Bus. Law §§ 349, 349-c, 350, 350-e. These statutes require the allegation of consumer-oriented conduct, *see Exxonmobil Inter-America, Inc. v.Advanced Info. Eng'g Servs., Inc.,* 328 F.Supp. 2d 443, 447 (S.D.N.Y. 2004) (discussing requirements of section 349); *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (discussing requirements of section 350), and the FAC does not contain sufficient allegations of such conduct. While Plaintiff may have paid Google to participate in the AdWords program, he is not a consumer in the sense of those sections, and he fails to state a claim upon which relief can be granted. The claims under N.Y. Gen. Bus. Law §§ 349, 349-c or §§ 350, 350-e that are included in the proposed complaint do not differ materially from those of the FAC. *See* Proposed Complaint ¶¶ 251-277.

3.   Claims Under California Law

   a.   Cartwright Act Claim

The FAC asserts a claim under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-70. Google moves to dismiss the Cartwright Act claim on the same basis that it moves to dismiss the Donnelly Act claim. Motion 12-13 (citing *Freeman v. San Diego Ass'n of Realtors*, 77 Cal.App.4th 171, 183 n.9 (1999) ("In analyzing [plaintiff's] Cartwright Act claims we frequently examine federal precedent because the Cartwright Act is similar in language and purpose to the Sherman Act. However, federal precedents must be used with caution because the acts, although similar, are not coextensive.")). Plaintiff offers no explanation as to how the substance of his Cartwright Act claim differs from that of his Sherman Act claims. *See* Opposition 14. The Court concludes that this claim is also subject to dismissal.

   b.   Other Claims Under California Law

The proposed complaint adds eight additional claims under California law, none of which is legally sufficient as presently framed.

      i.   Secret Rebates Injuring Competition in Violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17000, *et seq.*

1    Plaintiff fails to allege a secret rebate or discount that would constitute a violation of this
2    statutory section. It is not clear from this proposed claim that Google is alleged to have done
3    anything more than offer a bulk discount. Moreover, the claim is built on implication and lacks
4    factual specificity.

         ii.     Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing[6]

7    Plaintiff's proposed breach of contract claim states a number of alleged provisions of the
8    AdWords agreement, Proposed Complaint ¶172 A-O, and then alleges that "Google has
9    intentionally failed to live up to, and has breached, each of [these] AdWords Promises." *Id.* ¶
10   173. Plaintiff does not explain how the alleged provisions relate to the specific language and
11   terms of the AdWords agreement. Nor does Plaintiff allege exactly how Google breached the
12   agreement. Instead, he attempts to link Google's IPO, Plaintiff's political campaigns, the
13   complexity of AdWords, and the reasonable expectations of small business owners.

         iii.    Rescission of Contract Under Cal. Civ. Code § 1689(b)

15   Plaintiff's proposed rescission claim, pled in the alternative to his reformation claim,
16   lacks factual specificity because it is built around expansive readings of what Google implied by
17   making a number of unambiguous and uncontroversial statements.[7]

         iv.     Reformation of Contract to Delete Illegal Venue Provision

19   Plaintiff may not challenge the venue provision in the AdWords contract because Judge

---

[6] Neither the breach of contract claim nor the reformation of contract claim identifies the law under which it is brought. Reading them in the context of the rest of the proposed complaint, the Court concludes that Plaintiff intended to bring them under California law.

[7] For example, the proposed complaint includes the following two paragraphs that describe representations by Google:
"C. That Google was conducting a legitimate auction in which the highest bidder was able to obtain the best ad position;
D. Impliedly, that Google was not manipulating the auction results through arbitrary, subjective evaluations of the Plaintiff's ad copy, website, or landing page to require the Plaintiff to bid 10, 20, 50 or 100 times the minimum price to be able to have the Plaintiff's ad run at all (in the least favorable position)."
Proposed Complaint ¶¶ 191 C-D.

11
Case No. C 06-7297 JF (RS)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

1  Patterson has found that provision enforceable.

          v.      Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)

The "underlying purpose" of the California Consumer Legal Remedies Act is "to protect consumers against unfair and deceptive business practices." Cal. Civ. Code § 1760. A consumer is "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal Civ. Code § 1761(d). Since Plaintiff's stated purpose for using AdWords is commercial and political, he is not a consumer under the definition of the act and may not bring an action on basis of the facts alleged.

          vi.      Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*

Plaintiff seeks damages under Cal. Bus. & Prof. Code § 17200 *et seq.* However, that act provides for injunctive relief and penalties, not damages. *See* Cal. Bus. & Prof. Code §§ 17202-03, 17206.

          vii.     False and Misleading Advertising in Violation of Cal. Bus. & Prof. Code §§ 17500-09

The proposed claim for false and misleading advertising lacks factual detail in that it does not identify the false and misleading statements allegedly made by Google. Proposed Complaint ¶¶ 232-40.

          viii.    Class Action Claims Under California Law

As Google notes, Plaintiff may not pursue claims as a class representative and at the same time serve as counsel to that class. *See In re. Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996). Moreover, a purported class representative may not represent a class unless he is able to state a claim upon which relief can be granted.

4.    Further Leave to Amend

Having considered the procedural history of the case, the Court concludes that it should permit Plaintiff to amend his claims. As Judge Patterson noted, "[t]hough it does appear that Plaintiff's claims will be difficult to sustain, it does not appear that they are 'clearly doomed.'" October 11, 2006 Order 14-15, Kramer Decl. Ex. G. Accordingly, Plaintiff may file a second

12

amended complaint within thirty days of the date this order is filed. Any amended complaint shall be limited to the six claims[8] included in the original complaint.[9] Plaintiff should consider including only a subset of those claims.[10]

### IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED with leave to amend. Plaintiff shall file any amended complaint within thirty days of the issuance of this order.[11]

DATED: March 16, 2007

JEREMY FOGEL
United States District Judge

---

[8] The proposed complaint splits the original claim under section two of the Sherman Act into two separate claims. If Plaintiff concludes that he must split his Sherman Act § 2 claims and assert one claim for attempted monopolization and another for monopolization, he may do so, thereby raising the total number of claims in the amended complaint to seven.

[9] This restriction is ordered without prejudice to a future motion for leave to amend the complaint if Plaintiff is able to state a viable claim in an amended complaint.

[10] The Court did not reach Google's argument that the entire proposed complaint would be subject to dismissal under Fed. R. Civ. P. 8, but, if appropriate, it will consider a similar argument as to an amended complaint.

[11] To the extent that Plaintiff's motion to file an amended complaint, filed on February 9, 2007, was not disposed of by the Court's order on February 13, 2007, that motion is denied.

13
Case No. C 06-7297 JF (RS)
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

This Order has been served upon the following persons:

Jonathan M. Jacobson        jjacobson@wsgr.com, ageritano@wsgr.com

David H. Kramer             dkramer@wsgr.com, dgrubbs@wsgr.com

Notice will be delivered by other means to:

Sara Ciarelli
Wilson Sonsini Goodrich & Rosati
12 East 49th Street, 30th Floor
New York, NY 10017

Susan B. Creighton
Wilson Sonsini Goodrich & Rosati
12 East 49th Street, 30th Floor
New York, NY 10017

Meredith K. Kotler
Wilson Sonsini Goodrich & Rosati, P.C.
12 East 49th Street, 30th Floor
New York, NY 10017

Carl E. Person
325 W. 45th Street, Suite 201
New York, NY 10036-3803