1  DAVID H. KRAMER, State Bar No. 168452
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
4  Facsimile: (650) 565-5100
5  DKramer@wsgr.com

6  JONATHAN M. JACOBSON, N.Y. State Bar No. 1350495
   CHUL PAK, N.Y. State Bar No. 2341360
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  1301 Avenue of the Americas, 40th Floor
9  New York, NY 10019-6022
   Telephone: (212) 999-5800
10 Facsimile: (212) 999-5899
   JJacobson@wsgr.com
11 CPak@wsgr.com

12
   *Attorneys for Defendant Google Inc.*
13

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CARL E. PERSON, | CASE NO.: C 06-7297 JF (RS) |
| Plaintiff, | DEFENDANT GOOGLE INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT |
| v. | |
| GOOGLE INC., | |
| Defendant. | Date: June 15, 2007<br>Time: 9:00 a.m.<br>Dept: 3<br>Before: Hon. Jeremy Fogel |

DEFENDANT GOOGLE INC.'S MTD SCA REPLY
CASE NO.: C-06-7297 JF (RS)

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION..................................................................................................................1

II.    ARGUMENT ........................................................................................................................1

        A.    The SAC's Alleged Product Markets Fail................................................................2

        B.    Mr. Person Has Not Sufficiently Alleged Anticompetitive Conduct.......................4

                1.    Google Can Lawfully Charge Different Prices to Different Customers ..................................................................................................4

                2.    Google's Business Practices Are Lawful ......................................................4

                3.    Google's Administration of AdWords Is Not Exclusionary .......................5

                4.    If an "Essential Facilities" Doctrine Exists, Mr. Person Fails to Meet It ................................................................................................................6

                5.    There Is No Plausible Theory as to How Google's Acquisitions Caused Mr. Person Antitrust Injury .............................................................6

III.    CONCLUSION .....................................................................................................................7

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ................................................................................. 6

*America Online, Inc. v. GreatDeals.net*,
    49 F. Supp. 2d 851 (E.D. Va. 1999) ....................................................................... 3

*Atlantic Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ............................................................................................ 4, 6

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................................... 3

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ............................................................................................... 4

*California Computer Prods., Inc. v. IBM*,
    613 F.2d 727 (9th Cir. 1979) .................................................................................. 5

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*,
    848 F.2d 976 (9th Cir. 1988) .................................................................................. 5

*Heerwagen v. Clear Channel Communications, Inc.*,
    435 F.3d 219 (2d Cir. 2006) ................................................................................... 1

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
    451 U.S. 557 (1981) ............................................................................................... 1

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ................................................................................ 5

*Monahan's Marine, Inc. v. Boston Whaler, Inc.*,
    866 F.2d 525 (1st Cir. 1989) .................................................................................. 4

*Northwest Publications, Inc. v. Crumb*,
    752 F.2d 473 (9th Cir. 1985) .................................................................................. 6

*O'Neill v. Coca-Cola Co.*,
    669 F. Supp. 217 (N.D. Ill. 1987) .......................................................................... 7

*Official Airline Guides, Inc. v. F.T.C.*,
    630 F.2d 920 (2d Cir. 1980) ................................................................................... 4

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .................................................................................. 2

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*,
    783 F.2d 1347 (9th Cir. 1986) ................................................................................ 5

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ........................................................................................................... 1, 4

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*,
  540 U.S. 398 (2004) ........................................................................................................... 1, 4,
                                                                                                                              5, 6

**OTHER AUTHORITIES**

ABA A<small>NTITRUST</small> S<small>ECTION</small>, A<small>NTITRUST</small> L<small>AW</small> D<small>EVELOPMENTS</small> 814-15 (6th ed. 2007). ................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Google moved to dismiss Mr. Person's Second Amended Complaint ("SAC") because it failed to correct the flaws and omissions identified by this Court in dismissing his First Amended Complaint ("FAC"). March 16, 2007 Order (the "Order"). As explained in Google's opening brief, the SAC (1) alleges a relevant product market consisting of search-based Internet advertising that the Court previously ruled was "too narrow," and (2) complains of business practices that the Court has already found to be lawful. In response, Mr. Person impermissibly seeks to add to the record a prolix declaration and 19 exhibits consisting of random articles, all of which purports to repeat the substance of his 52-page SAC. But simply dumping more information on the Court (on a motion challenging only the cognizability of the allegations Mr. Person has pled) does nothing to cure the fundamental problems with his case. Mr. Person's product market allegations remain "too narrow," and he has failed to offer allegations demonstrating anything anticompetitive about Google's business practices. Despite his repeated opportunities to state a claim, Mr. Person has failed to do so. The SAC should again be dismissed, this time with prejudice.

## II. ARGUMENT

Mr. Person does not dispute the basic antitrust elements that he must meet to survive a motion to dismiss. The monopolization claim requires Mr. Person to show that Google possesses monopoly power in the relevant market, and the maintenance or use of that power by anticompetitive means as opposed to legitimate business practices or the deployment of a superior product. *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407 (2004); *Heerwagen v. Clear Channel Communications, Inc.*, 435 F.3d 219, 226 (2d Cir. 2006). The attempted monopolization claim requires Mr. Person to show that Google engaged in anticompetitive conduct with a specific intent to monopolize, and a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 455 (1993); *Heerwagen*, 435 F.3d at 227. Among other things, therefore, both claims require sufficient factual allegations to show (1) a relevant product market, (2) anticompetitive or exclusionary

1  conduct, and (3) injury-in-fact to Mr. Person that was caused by the purported wrongful conduct.
2  *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981); *Rebel Oil Co., Inc. v.
3  Atlantic Richfield Co.,* 51 F.3d 1421, 1432-33 (9th Cir. 1995).  Mr. Person's SAC fails on all
4  three scores.

### A.     The SAC's Alleged Product Markets Fail

The Court has previously ruled that search-based Internet advertising is "too narrow" to form a relevant product market because it is "reasonably interchangeable with other forms of Internet advertising." Order at 6-7. Nothing in the SAC or Mr. Person's latest submission warrants changing the Court's prior ruling.

Mr. Person now claims that recently developed "facts" support the existence of a separate search market. Opp. Br. at 10. But there is no real new fact concerning the efforts by Google, Yahoo!, Microsoft, and others to improve their Internet search services. The FAC and SAC are replete with the history of competition among these firms. Far from answering the critical product market question of whether search-based Internet advertising and other forms of Internet advertising are reasonably interchangeable, the activities of Google and its rivals to out-duel each other merely underscore the nature of competition in this evolving industry.

The only new fact that Mr. Person raises is the recent announcement that Google will acquire DoubleClick, subject to regulatory approval by the Federal Trade Commission. Opp. Br. at 10. DoubleClick facilitates non-search Internet advertising by providing customers with display-based advertising tools and related services that track the efficacy of banner ads (and other forms of display ads, such as rich media advertisements) placed on websites. Although Mr. Person contends that the acquisition proves the existence of a distinct search market, Google's decision to acquire a non-search advertising firm proves nothing. The fact that Google and other firms with search technologies, such as Microsoft and Yahoo!, would offer billions of dollars to acquire a firm that facilitates non-search based Internet advertising confirms the Court's observation that other forms of advertising are reasonably interchangeable with search advertising. The acquisition reflects the broader competition that Google faces, and the strategic

1  transactions it must make in order to remain competitive and offer its customers all forms of
2  advertising, not just search-based Internet advertising.

3  Mr. Person makes the bold and factually unsupported assertion that price increases for
4  search advertising "do not drive advertisers into purchasing non-search advertising." Opp. Br. at
5  11. But the very same article he relies on points to the contrary. According to the article, Ford
6  recently engaged an "online ad-targeting network" firm called Specific Media Inc. to analyze the
7  traffic at websites visited by women aged 25 to 54 for the purpose of targeting car ads to this
8  group of women, and was willing to pay 62% more to advertise on those websites. Person Dec.
9  Exh. R. Ford's advertising had nothing to do with search terms, and everything to do with other
10 forms of Internet advertising. Ford did precisely what the Court recognized were the options
11 reasonably available to advertisers in the Internet space: a website "may choose to advertise via
12 search-based advertising or by posting advertisements independently of any search." Order at 6-
13 7; *see also America Online, Inc. v. GreatDeals.net*, 49 F. Supp. 2d 851, 858-59, (E.D. Va. 1999)
14 (numerous forms of Internet and non-Internet advertising are reasonably interchangeable).

15 As a last refuge, Mr. Person asks the Court to forego dismissal of the SAC so that he can
16 conduct discovery on the product market issue. Opp. Br. at 11. It is precisely this type of costly
17 fishing expedition that a motion to dismiss is designed to prevent. Although decided under a
18 different set of facts than here, the Supreme Court recently reaffirmed the appropriateness of
19 dismissing antitrust complaints, based in part on the detrimental cost of subjecting a defendant to
20 expensive antitrust discovery. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The
21 Supreme Court concluded that the complaint there should be dismissed because "it is only by
22 taking care to require allegations that reach the level suggesting conspiracy that we can hope to
23 avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope
24 that the [discovery] process will reveal relevant evidence' to support a § 1 claim." *Id.* at 1967.
25 The Court has already ruled, correctly, that the relevant product market here is broader than the
26 search market; no amount of discovery will change that decisive fact.

27
28

**B.     Mr. Person Has Not Sufficiently Alleged Anticompetitive Conduct**

The Court has already ruled that Mr. Person failed to allege the requisite "exclusionary or anticompetitive conduct" necessary to sustain his monopolization and attempted monopolization claims. Order at 7-8; *see also Trinko*, 540 U.S. at 407 (a plaintiff must allege anticompetitive "conduct"); *Spectrum Sports*, 506 U.S. at 456. Without curing its flaws, Mr. Person's opposition simply repeats the SAC's litany of Google's purportedly anticompetitive business practices. He alleges no new or different conduct but, instead, recasts and repeats conduct allegations that this Court has already rejected.

1.     *Google Can Lawfully Charge Different Prices to Different Customers*

Mr. Person asserts that Google's prices as to him are unlawfully discriminatory. Opp. Br. at 16. But the Court, supported by well-established precedent, has ruled that "high prices, by themselves, are not anticompetitive or exclusionary." Order at 7-8 (citing *Trinko*). As long as the prices are not predatory, and Mr. Person makes no such allegations, Google can lawfully charge "monopoly prices" and different prices to different customers. *Trinko*, 540 U.S. at 407; *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993); *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990); *Monahan's Marine, Inc. v. Boston Whaler, Inc.*, 866 F.2d 525, 528-29 (1st Cir. 1989) (Breyer, J.). "[D]iscriminatory pricing does not threaten competition." Order at 8; *Trinko*, 540 U.S. at 407-08; *Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920, 927-28 (2d Cir. 1980).

2.     *Google's Business Practices Are Lawful*

Mr. Person accuses Google of engaging in a variety of other supposedly anticompetitive and exclusionary business practices against him. Specifically, Mr. Person asserts that Google permits some firms, but not him, to use AdWords to monetize their website traffic; lets "favored customers" use keywords not made available to Mr. Person; and will not permit him to be the only customer for particular keywords. Opp. Br. at 16-17. As the Court observed with respect to the FAC, "it is difficult to determine what types of competition Plaintiff believes are threatened by Google's actions." Order at 8. Mr. Person sometimes refers to himself as a Google "customer," at other times a "very small competitor," and sometimes both. *See*, e.g., Opp. Br. at

2 ("competitor"), 17 ("customer") & 19 (both). But the distinction does not matter because "he still fails to state a claim with sufficient clarity." Order at 8.

If he is a "customer," Mr. Person's claims must be dismissed because he cannot show the requisite impairment of rivals allegedly caused by Google's conduct. *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir. 1988); *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 783 F.2d 1347, 1350 (9th Cir. 1986) (Section 2 claims dismissed because defendant hockey league's refusal to grant plaintiff a franchise did not injure competition since plaintiff did not compete with defendant and there was no other hockey team in Seattle that defendant was trying to protect). If he is a small "competitor" of Google's, Mr. Person's claims still fail because Google simply is not obliged to do business with him. *MetroNet Servs Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131 (9th Cir. 2004); *California Computer Prods., Inc. v. IBM*, 613 F.2d 727, 744 (9th Cir. 1979) ("IBM, assuming it was a monopolist, had the right to redesign its products to make them more attractive to buyers . . . It was under no duty to help [plaintiff] survive or expand"). Google is free to "exercise [its] own independent discretion as to parties with whom [it] will deal," and the terms by which it will deal with them, if at all. *Trinko*, 540 U.S. at 408.

### 3. *Google's Administration of AdWords Is Not Exclusionary*

Mr. Person claims that Google engages in exclusionary conduct that deprives him of access to Google's search AdWords program, which he claims is necessary to build website traffic and monetize the traffic for his websites. Opp. Br. at 2. That is, Mr. Person claims the right to display AdWords advertisements on his own websites. It is important to understand a fundamental fact, appropriately considered here based on the SAC's allegations and attachments, about Google's business that undercuts Mr. Person's complaint. Although Mr. Person focuses on Google's AdWords search advertising program, he ignores Google's other advertising program for website developers like him – AdSense. As explained in the opening brief, AdSense allows third-party website publishers to benefit from Google's AdWords program on their own websites. Google Br. at 3. In AdSense, third-party publishers can display AdWords advertisements either based on a user's search query or based on the content of the third-party

website that the user is viewing.  *Id.*  When users of a third-party site click on those advertisements, Google shares a portion of the payment it receives with the publisher of the sites from which the click originated.  *Id.*  Google generally makes the AdSense program available to any website publisher, including Mr. Person, but he does not allege that he has sought to participate in the AdSense program.  *Id.*  In other words, Mr. Person has not been excluded from Google's products.  He has simply failed to take advantage of the opportunities afforded to him (and to all others) by Google.  In short, Mr. Person has failed to identify exclusionary conduct by Google.

### 4.  *If an "Essential Facilities" Doctrine Exists, Mr. Person Fails to Meet It*

Mr. Person urges that the "essential facilities doctrine should not be discarded" even though the Supreme Court recently undermined its continuing viability.  *Trinko*, 540 U.S. at 410-11 ("We have never recognized such a doctrine").  But even accepting the doctrine still exists in some form, under Ninth Circuit precedent, a "facility that is controlled by a single firm will be considered 'essential' only if control of the facility carries with it the power to eliminate competition in the downstream market."  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 (9th Cir. 1991).  Mr. Person asserts no facts establishing that *competition* faces elimination as a result of Google's conduct.  To the contrary, despite Google's purported exclusionary conduct, Mr. Person admits that Google faces competition from "major search engines," and that he himself has opened or is about to open numerous websites.  SAC ¶¶ 6 & 23.

### 5.  *There Is No Plausible Theory as to How Google's Acquisitions Caused Mr. Person Antitrust Injury*

Mr. Person complains about Google's acquisitions, none of which has yet been challenged by any government antitrust authority.  Opp. Br. at 13-16.  But Mr. Person fails to allege sufficiently that any or all of the acquisitions caused him injury in fact.  Mr. Person must allege a sufficient connection between the harms allegedly done to him by Google and harm to competition or consumers.  *Atlantic Richfield*, 495 U.S. at 334; *see also* ABA ANTITRUST SECTION, ANTITRUST LAW DEVELOPMENTS 814-15 (6th ed. 2007); *Northwest Publications, Inc. v. Crumb*, 752 F.2d 473, 476-77 (9th Cir. 1985).  Here, Mr. Person nowhere explains how

1  Google's acquisitions of such diverse firms as DoubleClick, YouTube, Picasa, or Adscape could
2  conceivably have injured him.  The acquisitions may or may not have strengthened Google and
3  made it a stronger competitor.  But either way, it is obvious that Mr. Person was not harmed.
4  Not surprisingly, he has failed to allege facts explaining how such harm could have occurred.
5  *See O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 222-23 (N.D. Ill. 1987).  Moreover, as
6  explained in Google's opening brief, the acquisitions could not have caused antitrust injury
7  because Mr. Person admits that the acquisitions benefit consumers by providing superior
8  technology at lower costs, and has spawned even more competition among Google, Microsoft,
9  Yahoo!, and other firms.  Google Br. at 13-14.

## III.    CONCLUSION

For the reasons stated above, Google Inc. respectfully requests that the Court dismiss the Second Amended Complaint in its entirety, and with prejudice.

Respectfully submitted,

Dated:  June 1, 2007               WILSON SONSINI GOODRICH & ROSATI
                                   Professional Corporation


By: /s/ Jonathan M. Jacobson

Jonathan M. Jacobson

*Attorneys for Google Inc.*